STACEY M. GRAY (SG 7735)
STACEY M. GRAY, PC
55 Broad Street, Suite 2901
New York, New York 10004
(212) 227-9163

*Attorney for Plaintiff*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| MAUREEN J. CAULFIELD | ) | |
| | ) | |
| Plaintiff, | ) | 07 Civ. 1257 (DC) |
| | ) | |
| vs. | ) | |
| | ) | **PLAINTIFF'S FIRST AMDENED** |
| | ) | **COMPLAINT AND DEMAND** |
| IMAGINE ADVISORS, INC.; IMAGINE | ) | **FOR JURY TRIAL** |
| GROUP HOLDINGS, LTD.; BROOKFIELD | ) | |
| PROPERTIES CORP.; and individually | ) | |
| and in their official capacities, PER SEKSE, | ) | |
| ROBERT "BOB" FORNESS, MICHAEL DALY, | ) | |
| and ROBERT STUART, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## INTRODUCTORY STATEMENT

This is a civil rights action in which the plaintiff, MAUREEN J. CAULFIELD, seeks relief from the denial by defendants IMAGINE ADVISORS, INC., IMAGINE GROUP HOLDINGS, LTD.; BROOKFIELD PROPERTIES CORPORATION, PER SEKSE, ROBERT FORNESS, MICHAEL DALY and ROBERT STUART of her right to be free from discrimination and retaliation based upon disability as guaranteed by the Americans with Disabilities Act of 1990, 42 U.S.C. §§12101 et seq., and gender discrimination as guaranteed by Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. Sec. 2000e et seq.; her right to benefits pursuant to ERISA 29 U.S.C. §§ , 1132(a), 1104 and 1109; her right to equal employment opportunities by the New State Executive Law §§296 et seq. and the New York City Human

Rights Law, Section 8-107 of the Administrative Code of the City of New York.  The plaintiff seeks damages, compensatory and punitive, affirmative and equitable relief, an award of costs and attorney's fees, and such other and further relief as this Court deems equitable and just.

## JURISDICTION

1.      This action arises under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§12101 et seq., and rights as guaranteed by Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. Sec. 2000e et seq.; her right to equal employment opportunities by the New State Executive Law §§296 et seq. and the New York City Human Rights Law, Section 8-107 of the Administrative Code of the City of New York and the laws of the State of New York, this being an action seeking redress for the violation of the plaintiff's federal constitutional, civil and statutory rights.

2.      Jurisdiction is also conferred upon this Court by 28 U.S.C. §§1331, 1343(3) and (4), 42 U.S.C. § 2000e-(5)(f)(3), and  29 U.S.C. §1132(a) et seq., §1002(3) et seq., §1104 and §1109 et seq., and § 502 et seq.

3.      Declaratory, injunctive, and equitable relief is sought pursuant to 29 U.S.C. §621 et seq. and pendent claims.

4.      Plaintiff's claim for declaratory and injunctive relief is authorized by 28 U.S.C. §§2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure.

5.      Compensatory and punitive damages are sought pursuant to 29 U.S.C. §§ 216 and 217 and the pendent claims.

6.      Costs and attorney's fees may be awarded pursuant to 29 U.S.C. §621 et seq., and Rule 54 of the Federal Rules of Civil Procedure.

7.      The plaintiff further invokes this Court's pendent jurisdiction, pursuant to 28 U.S.C. §1367(a), over any and all state law claims and against all parties that are so related to claims in this action within the original jurisdiction of this Court in that they form part of the same case or controversy.

**VENUE**

8.      Venue properly lies in this District under 28 U.S.C. §1391(a), (b) and (c) and 29 U.S.C. § 621 et seq., this being the District where defendants conduct business and the District where the plaintiff is employed by the defendants.

**JURY DEMAND**

9.      The plaintiff demands a trial by jury on each and every one of her claims as pled herein.

**EXHAUSTION**

10.     The plaintiff filed a timely complaint with the Equal Employment Opportunity Commission ("EEOC").  On November 27, 2006, the EEOC issued and mailed a Notice of Right to Sue to the plaintiff.

11.     The plaintiff is filing this complaint within ninety days of the receipt of the "Notice of Right to Sue" letter.  In all respects, the plaintiff has complied with all procedural requirements to her filing a lawsuit.

**PARTIES**

12.     The plaintiff, MAUREEN J. CAULFIELD, is a non-disabled woman within the meaning of the laws against employment discrimination.

13.     Plaintiff is a citizen of the United States of America and resides in New York County, New York.

14.     At all relevant times, the plaintiff is an employee of defendant Imagine Advisors, Inc., which is IMAGINE GROUP HOLDINGS' NY-based reinsurance intermediary.

15.     The defendant, IMAGINE ADVISORS, INC., is a corporation organized under the laws and State of Connecticut and is domiciled and conducts business at One Liberty Plaza, 23rd Floor, New York, New York 10006 and 27 Hartford Turnpike, Suite #202, Vernon, Connecticut 06066.

16.     The parent company of IMAGINE ADVISORS, INC., is Imagine Insurance Company Ltd., which is based in Barbados, Cedar Court, 2nd Floor, Widley Business Park, St. Michael, Barbados.

17.     At all relevant times, Defendant, IMAGINE ADVISORS, INC., has employed approximately fifteen (15) employees.

18.     Imagine Insurance Company, Ltd., is a direct subsidiary of the group holding company, defendant IMAGINE GROUP HOLDINGS, LTD.

19.     The defendant, IMAGINE GROUP HOLDINGS, LTD., is a corporation organized in Bermuda, and conducts business in New York via its subsidiary, Imagine Advisors, Inc., located at One Liberty Plaza, 23rd Floor, New York, NY 10006.

20.     Defendant, IMAGINE GROUP HOLDINGS, LTD., employs more than twenty (20) regular employees. At all relevant times, the plaintiff is an employee of defendant Imagine Group.

21.     The defendant, BROOKFIELD PROPERTIES CORP., is a corporation organized under the laws of Toronto, Canada**,** and is domiciled and conducts business at Three World Financial Center, 200 Vesey Street, 11th Floor, New York, NY 10281.

22.      The defendant, BROOKFIELD PROPERTIES CORP., employs more than 20 employees and provides medical and health benefits to the plaintiff because of its agreement with its affiliate, Imagine Group and Imagine Advisors, and at all relevant times Plaintiff was an employee of defendant Brookfield Properties.

23.     Defendant PER SEKSE ("SEKSE") is an employee of IMAGINE GROUP HOLDINGS, LTD. and IMAGINE ADVISORS, INC., within the meaning of the laws against employment discrimination; and he is being sued in his managerial and individual capacities.

24.     The defendant, SEKSE, is a man who is and was at all relevant times herein a member of senior management, the Chief Investment Officer, the Head of Human Resources in the U.S., a principal and agent of defendants IMAGINE GROUP HOLDINGS, LTD. and IMAGINE ADVISORS, INC.

25.     At all relevant times, Defendant SEKSE has been a supervisor of the plaintiff.

26.     Defendant SEKSE is a citizen of the United States of America and his primary residence is 29 Outlook Drive, Darien, Connecticut 06820-5617.

27.    The defendant, ROBERT "BOB" FORNESS ("FORNESS") is a man who is and was at all relevant times herein the Chief Underwriting Officer, a member of senior management, a principal, agent of defendants IMAGINE GROUP HOLDINGS, LTD. and IMAGINE ADVISORS INC.; and he is being sued in his managerial and individual capacities.

28.    Defendant FORNESS was a board member until December 2006 of defendant IMAGINE GROUP HOLDINGS, LTD.

29.    Prior to May 2006, Defendant FORNESS held the position of Co-Chief Executive Office for IMAGINE GROUP HOLDINGS, LTD. and all of its subsidiaries.

30.    At all relevant times, Defendant FORNESS has been a direct supervisor of the plaintiff.

31.    Defendant FORNESS is a citizen of the Unites States of America and his residence is 43 Rose Terrace, Chatham, New Jersey, 07928-2069.

32.    The defendant, MICHAEL DALY ("DALY"), is a man who is and was at all relevant times herein an employee of IMAGINE GROUP HOLDINGS, LTD. and IMAGINE ADVISORS, INC. within the meaning of the laws against employment discrimination, and is being sued in his managerial and individual capacities.

33.    Defendant DALY is a man who is and was at all relevant times a herein, a shareholder, the Chief Financial Officer, a member of senior management, a principal and agent of IMAGINE GROUP HOLDINGS, LTD. and IMAGINE ADVISORS, INC.; and he is being sued in his managerial and individual capacities.

34.    Defendant DALY was a board member until early December 2006 of defendant IMAGINE GROUP HOLDINGS, LTD.

35.    Prior to May 2006, defendant DALY held the position of Co-Chief Executive Office for IMAGINE GROUP HOLDINGS, LTD. and all of its subsidiaries.

36.    At all relevant times, Defendant DALY was a supervisor of the plaintiff.

37.    Defendant DALY is a citizen of Canada and resides at Panorama, 19 Salt Kettle Road, Bermuda, and PG 01.

38.    The defendant, ROBERT STUART ("STUART"), is a man who is and was at all relevant times herein a member of management, a principal and agent of IMAGINE GROUP HOLDINGS, LTD. and IMAGINE ADVISORS, INC.

39.     At all relevant times, Defendant STUART has been the General Counsel for IMAGINE GROUP HOLDINGS, LTD. and its subsidiaries.

40.     Defendant STUART is an employee of IMAGINE GROUP HOLDINGS, LTD. and all of its subsidiaries within the meaning of the laws against employment discrimination, and is being sued in his managerial and individual capacities.

41.     Defendant STUART is a citizen of Canada and resides at Flat 6.1, 60-66 Saffron Hill, London, ECIN 80X.

## STATEMENT OF FACTS

42.     On information and belief, Imagine Group Holdings Ltd. (herein after "Imagine Group") operates as an offshore non-US tax payer.

43.     Brookfield Asset Management is the parent company to Defendants Brookfield Properties, Imagine Group and Imagine Advisors.

44.     Defendants Brookfield Properties, Imagine Group and Imagine Advisors are affiliates because they are subsidiaries of Brookfield Asset Management.

45.     On information and belief, Imagine Group has Permanent Establishment Issues via Imagine Advisors, Inc. (hereinafter "Imagine Advisors"), with offices in New York, Hartford, St. Louis and Philadelphia, where underwriters actively negotiate and arrange transactions on shore for non-US tax paying offshore companies.

46.     On information and belief, Imagine Group Holdings, Ltd. has U.S. regulatory issues if and when Imagine Advisors acts in the capacity of a dependent agent of Imagine Group's offshore reinsurance subsidiaries.

47.     On information and belief, Imagine Group and Imagine Advisors are subject to certain Sarbanes-Oxley protocols, which arise from ownership by Brookfield Asset Management Inc., a U.S. traded company.

48.     At all relevant times, the plaintiff was a member of a class of employees protected by Title VII and the Americans with Disabilities Act (hereinafter "ADA") with respect to the discriminatory and retaliatory conduct complained of herein.

49.     Management at Imagine Advisors and Imagine Group both regarded and treated Plaintiff as mentally disabled absent medical or legal justification.

50.     Plaintiff is female.

51.     Plaintiff has not been disabled pursuant to the ADA at all relevant times.

52.     Plaintiff applied for the position of Senior Underwriter with Enterprise Advisors, Inc., on or about August 2003.

53.     Enterprise Advisors subsequently changed its name to Imagine Advisors and is Imagine Group's NY-based reinsurance intermediary.

54.      During the interview process management did not disclose to Plaintiff that any of her assigned duties and responsibilities would require illegal activity.

55.     At all relevant times, none of Imagine Group's subsidiaries with offices in New York is licensed to underwrite any insurance or reinsurance business in the United States.

56.     As per Plaintiff's employment contract, her role as Senior Underwriter is "to lead and/or participate on deal teams involving other underwriters, actuaries, claims specialists and other professionals both from within and outside Imagine Group."

57.     Plaintiff accepted the full-time position of Senior Underwriter with Enterprise Advisors, Inc. on August 13, 2003.

58.      In consideration and in exchange for Plaintiff becoming an employee, Imagine Advisors and Imagine Group provided her company benefits programs such as group life, accident and disability insurance, and health and dental insurance.

59.      At all relevant times, defendants Brookfield Properties, Imagine Advisors and Imagine Group had an agreement where Brookfield Properties would provide healthcare benefits to the employees of Imagine Advisors and Imagine Group.

60.     Brookfield Properties became an agent and representative of Imagine Group and Imagine Advisors.

61.     Brookfield Properties became an employer of Plaintiff because it had significant control over the terms and conditions of her employment despite not having common-law employment relationship.

62.     On information and belief, Imagine Advisors' Board of Directors and the Board's Corporate Governance & Human Resources Committee, influenced the decision for Brookfield Properties to provide employee benefits to Imagine employees.

63.     Brookfield Properties also had a third-party fiduciary duty to the plaintiff.

64.     Brookfield Properties breached its third-party fiduciary duty to Plaintiff by failing to ensure that all procedures regarding its employee benefit program were followed properly.

65.     Brookfield Properties had a conflict of interest and duty with respect to duties owed to Plaintiff and its relationship with Imagine Group and Imagine Advisors.

66.     Brookfield Properties unjustly profited by allowing Imagine's management to discriminate and retaliate against Plaintiff when one of its members unlawfully placed her on sick leave.

67.     Specifically, Imagine Group chose Brookfield Properties to remain the provider of its employee's benefit program the following year.

68.     At all relevant times, Plaintiff has been the only woman underwriter in the non-traditional product segment.

69.     Plaintiff learned in December 2004 that Imagine Group had been under subpoena by the Securities and Exchange Commission as part of an investigation into finite reinsurance practices.

70.     At all relevant times, the accounting firm KPMG has been the independent auditor to Imagine Group and some of its subsidiaries.

71.     In July of 2005, Plaintiff was phoned by the FBI to receive a subpoena on behalf of defendant, Imagine Group.

72.     The reason for the subpoena involved the New York Attorney General's independent review of finite reinsurance practices in New York.

73.     Imagine Group's outside counsel agreed to accept the subpoena.

74.     Management never discussed with Plaintiff the details of the investigation or subpoena during the period December 2004 through early November 2005.

75.     On information and belief, management knew that some of the duties and responsibilities assigned to Plaintiff were illegal.

76.     For example, management announced in the fall of 2004 that defendant Forness would relocate to Bermuda.

77.     On information and belief, defendant Forness relocated to Bermuda, in part, for tax and regulatory reasons as they relate to his role as Chief Underwriting Officer of an offshore reinsurer.

78.     In late November 2005, Imagine Group's in-house attorney, Elisabeth Colson, and Plaintiff had a conference call with Deborah Cotton, Anthony Calabrese and Charlene McHugh of the law firm Sidley Austin.

79.     The above discussed involved whether Plaintiff, a New York based employee, could conduct a client audit on behalf of a Bermuda-based underwriter.

80.     Attorney Elisabeth Colson concluded that Plaintiff could not conduct a client audit on behalf of a Bermuda-based underwriter.

81.     Elisabeth Colson continued dialogue with the firm Sidley Austin, which resulted in the "OCG Notes" sent by Sidley Austin and their subsequent opinion letters.

82.     On or about December 2, 2005, Plaintiff received a document drafted by Sidley Austin regarding "Activities of U.S. based employees of Imagine U.S. Holdings Limited and its U.S. Subsidiaries." (Exh. 2)

83.     Elisabeth Colson distributed an email to defendant Forness on December 2, 2005, that summarized Sidley Austin's opinion with respect to the permissible and impermissible activity of both Plaintiff and similarly situated David Koegel.

84.     That same day David Koegel forwarded Elisabeth Colson's December 2, 2005, email to Plaintiff.

85.     On information and belief, management reprimanded Ms. Colson for publishing the legal concerns summarized in the Sidley Austin findings that would pertain to David Koegel and Plaintiff.

86.     Approximately six months later, Elisabeth Colson was no longer employed by Imagine Group.

87.     On or about February 15, 2006, Plaintiff received a copy of an opinion letter from Sidley Austin regarding "U.S.-Based Activities of Offshore Reinsurer Not Licensed to Transact Insurance in the U.S."

88.     From November 2005 through the early third quarter of 2006, management assigned Plaintiff to work extensively with Imagine Group's CFO, Michael Daly, and Imagine Insurance AS Denmark ("IIAS") Finance Director, Claus Johansson, on the sale of the Danish subsidiary.

89.     In May 2006, Gregory Morrison was appointed President and Chief Executive Officer of Imagine Group and its subsidiaries.

90.     Shortly thereafter, defendant Forness had a conversation with Plaintiff and David Koegel that they should continue with their work because the new CEO would resolve the tax and regulatory concerns.

91.     On May 26, 2006, Plaintiff sent an email to defendant Forness concerning whether Claus Johansson, the Finance Director for IIAS, may have a conflict of interest with respect to the SIGMA Consortium offer.

92.     On June 2, 2006, Plaintiff emailed management repeating her concern that there may be a possible conflict of interest involving Claus Johansson and the Sigma Consortium offer.

93.     On June 6, 2006, defendant Michael Daly, Chief Financial Officer of Imagine Group, emailed Plaintiff, Claus Johansson, and defendant Stuart.

94.     Defendant Daly's email stated, "I will talk with Claus on this today. I spoke with Maureen on Sunday night. I want absolutely no more emails on this. None. [I]t stops now. Bob and [I] will discuss today and communicate to you all on how Bob and [I] will jointly manage this sale to a successful conclusion. Let['s] focus on getting the deal done and all rowing in the same direction."

95.     Defendant Daly carbon copied this email to Jesper Egebjerg as well as defendants Sekse and Forness.

96.     In response to Plaintiff's email dated June 2, 2006, defendant Sekse met with her for approximately one half hour on or about June 5, 2006.

97.     Although Imagine Group appointed Duncan Deacon as the Head of Global Human Resources, defendant Sekse still performed duties as Head of Human Resources in the United States of America.

98.    Management began discriminating and retaliating against Plaintiff when they stereotyped her as an overly emotional woman who is no longer fit to perform her role as a Senior Underwriter.

99.    Management also discriminated and retaliated against Plaintiff by unlawfully regarding and treating her as if she is disabled under the ADA.

100.    Management discriminated and retaliated against Plaintiff by reducing her leadership roles, duties and responsibilities, and by denying financial benefits for which Plaintiff is entitled, including without limitation, to appropriate Long Term Incentive Plan (herein after "LTIP" compensation and bonuses.

101.    Defendant, Imagine Group, provides for Plaintiff's "Imagine Insurance Long Term Incentive Plan".

102.    Coupled with the above, in mid to late July of 2006, Plaintiff learned from her similarly-situated male colleague, David Kogel, that defendant Forness was considering hiring the consultant Vanette Fleming.

103.    Then, just a few weeks later on August 9, 2006, Plaintiff's direct supervisor informed her that she now had only four core responsibilities as a Senior Underwriter.

104.    During that same conversation Plaintiff learned from defendant Forness that the consultant, Vanette Fleming, would replace her on the BQC Project/Business Assurance.

105.    Plaintiff complained that the reduction in duties and responsibilities could adversely affect her continued role at the company because management had limited her ability to contribute.

106.    Bonuses and the LTIP compensation are based, in part, on an employee's work product and contribution.

107.    Management replaced Plaintiff with the consultant, Vanette Fleming, which has adversely affected Plaintiff's compensation with respect to receiving an appropriate bonus and LTIP compensation worth hundreds of thousands of dollars.

108.    The reduction in the above duties and responsibilities comprised the following assignments:

    a.    Attending to ongoing Imagine needs concerning the IIAS sale;
    b.    Overseeing "The Falls" DJ Action;

     c.     Working on the audit plan for RCA; and

     d.     Continuing to support Cliff Simmonds on the Lloyd's Syndicate problem.

109.    Defendant Forness agreed to discuss management's reduction of Plaintiff's duties and responsibilities when Plaintiff returned from vacation.

110.    The following week, from August 14 through August 25, 2006, Plaintiff went on an already planned vacation and worked remotely.

111.    When Plaintiff went on vacation the consultant, Vanette Fleming, participated in on site meetings with David Koegel.

112.    During this period Vanette Fleming also discussed her upcoming duties on the BQC Project/Business Assurance.

113.    Plaintiff returned to work from vacation on Monday, August 28, 2006.

114.    Upon Plaintiff's return to work defendant Forness failed to discuss management's reduction of Plaintiff's duties and responsibilities with her as previously agreed prior to her vacation.

115.    Management also failed to return Plaintiff to her original duties when she returned from vacation.

116.    Instead, defendant Sekse contacted Brookfield Properties Director of Benefits, Betty Jane Schlossberg about employee benefits despite Plaintiff having not expressed a need or a request for sick leave.

117.    Ms. Schlossberg provided defendant Sekse with information based, in part, on his request.

118.    On information and belief, Ms. Schlossberg failed to fulfill her duties with respect to Plaintiff and defendant Sekse placing her on "sick leave".

119.    The defendant, Brookfield Properties Corp. provides medical and health benefits to the plaintiff.

120.    With respect to the plaintiff, Ms. Schlossberg failed to satisfy all of her duties as the Director of Benefits with respect to her exercising authority and control over the employee benefits program for Imagine employees.

121.    On information and belief, Ms. Schlossberg was and is responsible for leading the implementation and administering a spectrum of employee benefit programs.

122.    On information and belief, and at all relevant times, the Director of Benefits was responsible for ensuring that employees were properly treated by members of management and executives at Imagine with respect to the employee benefit program.

123.    The Director of Benefits also was responsible for making certain that rules and regulations were properly followed with respect to a member of management at Imagine placing an employee on "sick leave".

124.    The Director of Benefits failed satisfy her responsibilities in her official capacity and that failure adversely affected Plaintiff's terms and conditions of employment.

125.    Upon receiving information from the Director of Benefits, Defendant Sekse called Plaintiff on her cell phone on the evening of Thursday, August 31, 2006.

126.    During that telephone call defendant Sekse instructed Plaintiff to not return to work on Friday or the following week because he had unilaterally placed her on "sick leave absent medical or legal justification.

127.    Defendant Sekse continued that he wanted Plaintiff to consider seeking medical care.

128.    Defendant Sekse also ordered Plaintiff to contact Ms. Schlossberg the following day concerning medical disability benefits.

129.    Plaintiff felt intimidated and coerced to contact Ms. Schlossberg because of Mr. Sekse's evening call on August 31, 2006.

130.    Plaintiff contacted Ms. Schossberg the following day as instructed by defendant Sekse.

131.    Ms. Schlossberg also sent Plaintiff emails regarding aspects of the employee benefit program.

132.    Defendant Sekse then sent Plaintiff an email about the Employee Assistance Program.

133.    Plaintiff engaged in protected activity by retaining an attorney when management forced Plaintiff to take "sick leave" absent legal and medical justification

134.    Plaintiff retained an attorney to address the discriminatory and retaliatory conduct she has endured and continues to suffer.

135.    Ever since Plaintiff shared her reasonable belief that management was engaged in illegal activity in the summer of 2006, management has denied her the same opportunities as her similarly-situated David Koegel.

136.    Management also has made adverse employment decisions that limit her ability for career advancement within her organization and with prospective employer

137.    Management reduced Plaintiff's original responsibilities and duties on August 9, 2006 to four core responsibilities.

138.    Management has excluded and continues to exclude Plaintiff from important information and meetings, while they welcome David Koegel's participation.

139.    Plaintiff's attorney, Stacey Gray of Stacey M. Gray, P.C., sent a letter dated September 8, 2006 to defendant Sekse summarizing defendants' illegal conduct with respect to Plaintiff being unlawfully regarded as disabled pursuant to the ADA.

140.    On Monday, September 11, 2006, defendant Sekse retaliated against Plaintiff by placing her on "administrative leave" following receipt of Plaintiff's attorney's letter dated September 8, 2006.

141.    Management's decision to place Plaintiff on "administrative leave" is retaliatory.

142.    Defendants Stuart, Daly and Forness allowed co-defendant Sekse to unlawfully place Plaintiff on both "sick leave" and "administrative leave".

143.    To date management has failed to conduct a comprehensive investigation regarding Plaintiff's claims of discrimination and retaliation.

144.    As a direct consequence of management's decision to place Plaintiff on "sick leave" and "administrative leave" management has adversely interfered with Plaintiff's business relationships and opportunities.

145.    While Plaintiff was on "administrative leave" management denied her access to the office, her email and the company's computer system.

146.    On September 11, 2006, Barbara Roth, the attorney representing Imagine Group contacted Plaintiff's attorney, Stacey Gray.

147.    From September 11 through October 1, 2006, Plaintiff was on "administrative leave".

148.    Management did not allow Plaintiff access to the office, her email or Imagine's computer system while she was on "administrative leave".

149.    Plaintiff returned to work on October 2, 2006, as per the instruction of Imagine Group's attorney, Barbara Roth.

150.    Upon Plaintiff's return to work after being forced on "administrative leave", management and individually named defendants continued to retaliate by regarding and treating Plaintiff as a disabled woman in violation of Title VII and the ADA.

151.    Management regards Plaintiff as having a "condition" and has stereotyped her as a woman who is too emotional to perform her duties as a Senior Underwriter.

152.    In response to the discriminatory and retaliatory conduct Plaintiff has and continues to endure since her October 2, 2006 return to work, Plaintiff submitted letters to Per Sekse dated October 2 and October 4, 2006.

153.    On October 6, 2006, Per Sekse emailed Plaintiff regarding her future responsibilities as a Senior Underwriter.

154.    Defendant Sekse documented in his October 6th email that Plaintiff will "support the BQC project" despite having been originally assigned to co-lead the project.

155.    As of October 11, 2006 three out of the four tasks assigned to Plaintiff on August 9, 2006 require minimal work or no contribution from her.

156.    The remaining assignment out of the four assigned on August 9, 2006 is "The Falls" DJ action.

157.    Defendant Sekse identified another job responsibility for Plaintiff in his October 6, 2006 email to her.

158.    As a pretext for retaliation, management assigned an additional responsibility for Plaintiff: to produce "nontraditional business using broker and company networks, consistent with [Plaintiff's] roles as a senior underwriter."

159.    However management has failed to advise Plaintiff as to the regulatory and tax implications as summarized by Sidley Austin and Elisabeth Colson.

160.    Management's above conduct, with respect to requiring her to produce non-traditional business without appropriate tax and regulatory is retaliatory.

161.   In response to management's retaliatory conduct since Plaintiff's October 2nd return to work, Plaintiff submitted another letter dated October 13th to address the following:

e.   Return of Plaintiff's previous leadership roles;

f.   Being replaced by others;

g.   Loss of opportunities and reduction of duties;

h.   Disclosure of confidential information regarding Plaintiff's employment dispute to her similarly-situated male colleague, David Koegel; and

i.   Unequal treatment and punishment for the hostile conduct directed against Plaintiff by her similarly-situated colleague.

162.    To no avail management continued to make adverse employment decisions against the plaintiff in retaliation.

163.    Management unlawfully disclosed the plaintiff's employment dispute to her similarly-situated colleague, David Koegel.

164.    David Koegel behaved in a threatening manner to Plaintiff in response to management disclosing her employment dispute to him.

165.    David Koegel also behaved in a manner that denied Plaintiff access to immediately needed information that would allow her to fulfill her duties in a timely manner.

166.    Plaintiff informed management of Mr. Koegel's hostile treatment towards her, but management continues to retaliate against Plaintiff by negligently retaining him.

167.    To make matters worse, on October 16, 2006, management's attorney, Barbara Roth, submitted a letter on behalf of Imagine Group in response to Plaintiff's letters dated October 2 and October 6, 2006.

168.    Imagine Group's October 16th letter is retaliatory because of the many false claims that negatively affect the terms and conditions of Plaintiff's employment.

169.    For example, management falsely alleged that Plaintiff failed to properly complain of discriminatory and retaliatory conduct to management.

170.     Attorney Roth continued with the false allegation that Plaintiff did not exhaust available administrative remedies even though Imagine Group does not have comprehensive anti-discrimination and retaliation policies or procedures for employees to follow.

171.     Management retaliated against Plaintiff by falsely alleging that she failed to submit the notice of non-renewal of her employment contract for "Good Reason".

172.     As a result, management wrongly and intentionally claimed that Plaintiff forfeited her full rights to her LTIP for allegedly failing to submit a "Good Reason" for the non-renewal of her employment contract.

173.     Management wrongly claimed that Plaintiff forfeited her LTIP benefits to avoid having to pay the entitled amount.

174.     Plaintiff's employment contract references the offered LTIP plan.

175.     A reasonable person can ascertain the intended benefits of the LTIP plan.

176.     Plaintiff is a member of the class of beneficiaries that have been identified.

177.     On information and belief, the source of funding for the LTIP is through operating expenses.

178.     The procedures for Plaintiff and others receiving the LTIP benefits have been articulated with respect to time and manner.

179.     LTIP plans have been memorialized in documents and can be examined.

180.     Management also retaliated against Plaintiff by conducting an unfair performance appraisal of her that was submitted and published, with the intent to defame and adversely affect her on December 19, 2006.

181.     When Plaintiff challenged management's unfair performance appraisal of her in a letter dated December 20, 2006, management immediately informed her that she would now work from home for the remainder of her contract.

182.     Management further retaliated against Plaintiff when they did not increase Plaintiff's salary for calendar year 2007.

183.     Although management decided against increasing Plaintiff's salary, all defendants received increased salaries and bonuses despite the IIAS problems that were later acknowledged by management.

184.    Management still unlawfully regards and treats Plaintiff as a *disabled woman* and refers to her as having a "condition" absent any legal or medical justification.

185.    As a proximate cause of defendants' gender and disability discrimination and retaliation against Plaintiff, she has suffered and continues to suffer substantial losses, including the loss of past and future earnings, bonuses, deferred compensation and other employment benefits.

186.    As a further proximate cause of defendants' actions, Plaintiff has suffered and continues to suffer impairment and damage to Plaintiff's good name and reputation.

187.    The conduct of defendants was outrageous and malicious, was intended to injure Plaintiff, and was done with reckless indifference to Plaintiff's protected civil rights, entitling the Plaintiff to an award of punitive and compensatory damages.

188.    In management's discriminatory and retaliatory treatment of Plaintiff, all defendants, by and through their agents and representatives, acted and continue to act willfully in that they knew or should have known, and/or acted recklessly to the fact that their conduct is prohibited by Title VII and the ADA.

189.    All of management's actions found in this civil rights lawsuit herein are the approximate causes for Plaintiff's injuries.


## FIRST CLAIM

### (The Americans with Disabilities Act of 1990, 42 U.S.C.A. §§ 12101 et seq.)

190.    The plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 188 as if fully set forth.

191.    The conduct and actions of defendants, (excluding Brookfield Properties as a named defendant), by and through their agents and employees, subjected the plaintiff, who has been unlawfully regarded as disabled, to discrimination and retaliation with respect to the terms and conditions of her employment, was motivated by animus based on the plaintiff's sex and engagement in protected activity, was done intentionally, maliciously and/or with reckless disregard for the natural and probable consequences of defendants' actions, was done without

lawful justification, and was designed to and did cause specific and serious compensatory and punitive injury, in violation of the plaintiff's constitutional rights as guaranteed under the ADA.

## SECOND CLAIM

### (Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. sec. 2000e et seq, -- sex discrimination)

192.     The plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 191 as if fully set forth.

193.     The conduct and actions of defendants (excluding Brookfield Properties as a named defendant), by and through their agents and employees, subjected the plaintiff, who is a woman, to discrimination and retaliation with respect to the terms and conditions of her employment, was motivated by animus based on the plaintiff's sex and engagement in protected activity, was done intentionally, maliciously and/or with reckless disregard for the natural and probable consequences of defendants' actions, was done without lawful justification, and was designed to and did cause specific and serious compensatory and punitive injury, in violation of the plaintiff's constitutional rights as guaranteed under Title VII.

## THIRD CLAIM

### (Disability Discrimination under New York Human Rights Law)

194.     The plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 193 as if fully set forth.

195.     The conduct and actions of defendants (excluding Brookfield Properties as a named defendant), by and through their agents and employees, subjected the plaintiff, who has been unlawfully regarded as disabled, to discrimination and retaliation with respect to the terms and conditions of her employment, was motivated by animus based on the plaintiff's sex and engagement in protected activity, was done intentionally, maliciously and/or with reckless disregard for the natural and probable consequences of defendants' actions, was done without lawful justification, and was designed to and did cause specific and serious compensatory and punitive injury, in violation of the plaintiff's rights as guaranteed under the New York State Executive Law §296 et seq.

## FOURTH CLAIM

### (Sex Discrimination under the New York Human Rights Law)

196.    The plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 195 as if fully set forth.

197.    The conduct and actions of defendants (excluding Brookfield Properties as a named defendant), by and through its agents and employees, subjected the plaintiff, who is a woman, to discrimination and retaliation with respect to the terms and conditions of her employment, was motivated by animus based on the plaintiff's sex and engagement in protected activity, was done intentionally, maliciously and/or with reckless disregard for the natural and probable consequences of defendants' actions, was done without lawful justification, and was designed to and did cause specific and serious compensatory and punitive injury, in violation of the plaintiff's rights as guaranteed under the New York State Executive Law §296 et seq.

## FIFTH CLAIM

### (Disability Discrimination under Section 8-107 of the Administrative Code of the City of New York)

198.    The plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 197 as if fully set forth.

199.    The conduct and actions of defendants (excluding Brookfield Properties as a named defendant), by and through their agents and employees, subjected the plaintiff, who has been unlawfully regarded as disabled, to discrimination and retaliation with respect to the terms and conditions of her employment, was motivated by animus based on the plaintiff's sex and engagement in protected activity, was done intentionally, maliciously and/or with reckless disregard for the natural and probable consequences of defendants' actions, was done without lawful justification, and was designed to and did cause specific and serious compensatory and punitive injury, in violation of the plaintiff's rights as guaranteed under Section 8-107 of the Administrative Code of the City of New York.

## SIXTH CLAIM

### (Sex Discrimination under Section 8-107 of the Administrative Code of the City of New York)

200.    The plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 199 as if fully set forth.

201.    The conduct and actions of defendants (excluding Brookfield Properties as a named defendant), by and through their agents and employees, subjected the plaintiff, who is a woman, to discrimination and retaliation with respect to the terms and conditions of her employment, was motivated by animus based on the plaintiff's sex and engagement in protected activity, was done intentionally, maliciously and/or with reckless disregard for the natural and probable consequences of defendants' actions, was done without lawful justification, and was designed to and did cause specific and serious compensatory and punitive injury, in violation of the plaintiff's rights as guaranteed Section 8-107 of the Administrative Code of the City of New York.

## SEVENTH CLAIM

### (Breach of Contract)

202.    The plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 201 as if fully set forth.

203.    The conduct and actions of all defendants, by and through their agents and employees, breached their contract with the Plaintiff.

204.    The plaintiff and defendants entered into a valid contract through offer, acceptance and mutual agreement. Plaintiff performed her duties and responsibilities as specified by the contract by and between Imagine Advisors, Imagine Group and Brookfield Properties. Plaintiff informed defendants that they had violated the terms and conditions of her employment in letters to management. Defendants all failed to cure their breach despite the opportunity given in good faith and fair dealing.  The plaintiff has suffered economic and non-economic losses as a result of the defendants' breach of contract.

205.    Defendants' breach of contract is the proximate causes for Plaintiff's injuries.

## EIGHTH CLAIM

### (State Common Law Claim for Negligence)

206.     The plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 205 as if fully set forth.

207.      The conduct and actions of all defendants, by and through their agents and employees, were negligent.

208.     All defendants had a duty to care to Plaintiff because she was their employee and/or responsible for administering the employee benefit program properly to avoid injury to Plaintiff.  Defendants breached that duty of care when they discriminated and retaliated against Plaintiff and/or permitted such misconduct in violation of the ADA and Title VII.  Defendants knew or should have known that violating Title VII and the ADA and/or allowing such violations would cause Plaintiff harm.

209.     Defendants' negligence and reckless disregard of their duty of care for Plaintiff is the proximate cause for her injuries.

## NINTH CLAIM

### (State Common Law Claim for Gross Negligence)

210.     The plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 209 as if fully set forth.

211.     The conduct and actions of all defendants, by and through their agents and employees, were gross negligent.

212.     All defendants had a duty of care to Plaintiff because she was their employee and/or were responsible for administering the employee benefit program properly to avoid injury to Plaintiff.  Defendants breached that duty of care when they discriminated and retaliated against Plaintiff and/or allowed such misconduct in violation of the ADA and Title VII.

213.     Defendants were grossly negligent because they recklessly and intentionally disregarded Brookfield Properties' and Imagine's policies and procedures as they violated the ADA and Title VII, and/or allowed such misconduct to occur in violation of the ADA and Title

VII.  Defendants knew or should have known that violating Title VII and the ADA and/or allowing such misconduct to occur would cause Plaintiff harm.

214.    Defendants' willful, reckless and gross disregard of Defendants' duty of care owed to Plaintiff is the proximate cause for her injuries.

## TENTH CLAIM

### (Defamation Claim against Defendants for Statements Told to David Koegel)

215.    The plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 214 as if fully set forth.

216.    The conduct and actions of all defendants (excluding Brookfield Properties), by and through their agents and employees, were defamatory.

217.    All defendants had a duty of care to Plaintiff because she was their employee. Defendants breached that duty of care when they discriminated and retaliated against Plaintiff in violation of the ADA and Title VII.

218.    Defendants orally communicated to similarly-situated employee David Koegel false information about Plaintiff that was defamatory to Plaintiff.

219.    Defendants were grossly negligent because they recklessly and intentionally defamed Plaintiff with malicious intent, and caused Plaintiff harm.

220.    Defendants' willful, reckless and gross disregard of defendants' duty of care owed to Plaintiff is the proximate cause for her injuries.

## ELEVENTH CLAIM

### (Defamation Claim against Management for Defaming Plaintiff through a False Performance Evaluation)

221.    The plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 220 as if fully set forth.

222.    The conduct and actions of all defendants (excluding Brookfield Properties as a named defendant), by and through their agents and employees, were defamatory.

223.    All defendants had a duty of care to Plaintiff because she was their employee. Defendants breached that duty of care when they discriminated and retaliated against Plaintiff in violation of the ADA and Title VII.

224.    Defendants recklessly, maliciously and negligently produced and published false claims in their performance evaluation of Plaintiff for calendar year 2006 in retaliation and to defame Plaintiff.

225.    Defendants were grossly negligent because they recklessly and intentionally defamed Plaintiff with malicious intent, and caused Plaintiff harm.

226.    Defendants' willful, reckless and gross disregard of defendants' duty of care owed to Plaintiff is the proximate cause for her injuries.

## TWELVTH CLAIM
### (Negligent Retention of David Koegel)

227.    The plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 226 as if fully set forth.

228.    The conduct and actions of all defendants (excluding Brookfield Properties as a named defendant), by and through their agents and employees, are negligent.

229.    All defendants had a duty of care to Plaintiff because she was their employee. Defendants breached that duty of care when they discriminated and retaliated against Plaintiff in violation of the ADA and Title VII.

230.    Defendants have recklessly, maliciously and negligently retained David Koegel despite his unfair and hostile treatment of Plaintiff.

231.    Defendants' willful, reckless and gross disregard of Defendants' duty of care owed to Plaintiff is the proximate cause for her injuries.

## THIRTEEN CLAIM
### (Tortuous Interference with Contract and Contractual Relations)

232.    The plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 231 as if fully set forth.

233.    The conduct and actions of all defendants, by and through their agents and employees, are negligent.

234.    All defendants had a duty of care to Plaintiff because she the contract by and between them.  Defendants breached that duty of care when they discriminated and retaliated against Plaintiff in violation of the ADA and Title VII, and/or allowed such misconduct to occur.

235.    Defendants knew or should have known that Plaintiff had ongoing and existing business relationships, and negligently and intentionally interfered with her relationships with they unlawfully placed her on "sick leave", "administrative leave", and as they (excluding Brookfield Properties as a named defendant for the remaining phrase only) discriminated and retaliated against her.

236.    Defendants have recklessly, maliciously and negligently interfered with Plaintiff's business relationships and opportunities.

237.    Defendants' negligent, willful, reckless and gross disregard of Defendants' duty of care owed to Plaintiff is the proximate cause for her injuries.

## FOURTEENTH CLAIM
### (Breach of Fiduciary Duty with Respect to Employee Benefit Plans)

238.    The plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 237 as if fully set forth.

239.    Defendant Brookfield Properties, by and through its agents and employee, served as fiduciary to Plaintiff with respect to the employee benefit program.

240.    Defendant breached its fiduciary duty to Plaintiff when it failed to protect her from being regarded as disabled in violation of the ADA and Title VII.

241.    Defendant's negligence and gross negligence was unlawful and the proximate cause for Plaintiff's injuries.

## FIFTHEENTH CLAIM
### (Retaliation in order to prevent employee from Obtaining ERISA pension benefits)

242.    The plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 241 as if fully set forth.

243.    Defendants (excluding Brookfield Properties as a named defendant) serve as a fiduciary to the ERISA plan with respect to Plaintiff.

244.    Defendants have unlawfully denied plaintiff from entitled ERISA benefits with respect to her LTIP compensation.

245.    Defendants offered her LTIP compensation and such compensation is referenced in her employment contract.

246.    Defendants willful acts intended to deprive plaintiff of ERISA-protected benefits are unlawful and the proximate cause for plaintiff's injuries.

## SIXTEENTH CLAIM

### (Pendant State Common Law Claim – Respondeat Superior)

247.    The plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 246 as if fully set forth.

248.    At all relevant times, defendants and their agents were acting for, upon and in furtherance of the business of their employer and supervisor, and within the scope of their employment.

249.    Consequently, defendants are liable under the doctrine of respondeat superior for their tortuous acts that were the proximate cause of plaintiff's injuries.

**WHEREFORE,** Plaintiff demands judgment against defendants, as follows:

250.    An order prohibiting defendants from continuing or maintaining the policy, practice, and/or custom of denying job benefits to women.

251.    Injunctive relief and to restore Plaintiff's LTIP entitlements;

252.    An award to the plaintiff of her actual damages in an amount to be determined at trial for loss of wages, benefits, and promotional opportunities, including an award of front pay compensating plaintiff for loss of future salary and benefits;

253.    A declaration that defendants' action were in violation of the New York City Human Rights Law;

254.    An award of punitive damages;

255.    An award of compensatory damages;

256.    Interests on all amounts due;

257.    Plaintiff's costs of this action, together with her reasonable attorneys' fees to the full extent permitted by law; and

258.    Such other and further relief as this Court may deem just and proper.

Dated:  April 13, 2007
State and County:  New York, New York

STACEY M. GRAY, PC

By:     s/ Stacey M. Gray
_____
Stacey M. Gray, Esq. (SG 7735)
Stacey M. Gray, PC
55 Broad Street, Suite 2901
New York, NY 10004
(212) 227-9163

*Attorney for Plaintiff*
MAUREEN J. CAULFIELD

**Certificate of Service**

I, Stacey M. Gray, an attorney, do hereby swear and affirm that I caused a copy of the foregoing Plaintiff's First Amended Complaint and Demand for Jury Trial, *Maureen J. Caulfield v. Imagine Advisors, Inc., et al,* to be served on the Clerk's Office for the United States District Court, Southern District of New York in this action by hand delivery on April 13, 2007.

s/ Stacey M. Gray

_____

*Attorney for Plaintiff*
Stacey M. Gray, Esq. (SG-7735)
Stacey M. Gray, PC
55 Broad Street, Suite 2901
New York, NY 10004
(212) 227-9163

Service List:

The Clerk's Office
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007-1312